```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


COREY R. JOHNSON,                  :    CIVIL ACTION
                                   :    No. 13-6616
         Plaintiff,                :
                                   :
    v.                             :
                                   :
CITY OF PHILADELPHIA et al.,       :
                                   :
         Defendants.               :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              May 8, 2015

This case arises from Plaintiff Corey Johnson's pro se suit against Defendants City of Philadelphia ("the City"), Police Officer Efun Allen, and Police Officer James Little, for constitutional violations suffered in connection with Plaintiff's allegedly false arrest on March 21, 2013, related to an incident that occurred on January 25, 2013. Defendants have filed a motion for summary judgment. For the following reasons, the Court will grant the motion.

I.   **FACTUAL BACKGROUND**[1]

The incident at the heart of this case occurred in the context of a longer-term domestic dispute to which Plaintiff was

---

[1] The Court views the facts in the light most favorable to Plaintiff as the nonmoving party.

a party. This context is important because Plaintiff's theory of the case relies on the timing of earlier and later events connected to that dispute. The Court therefore provides a brief chronological sketch of these events.

During 2012, Plaintiff began a relationship with Sarah McFadden and, in December of that year, the two moved into a rental house at 6137 Mascher Street. Defs.' Br. Ex. D, Corey Johnson Deposition 23:12-16, Dec. 16, 2014 [hereinafter "Johnson Dep."]. On January 17, 2013, the couple's relationship took a turn for the worse and Plaintiff moved out. Id. at 22:16-17, 23:23-24.[2] That same day, McFadden obtained a protection from abuse ("PFA") order evicting Plaintiff from the house. Id. at 21:7-18. Later that month--on either January 23 or 24--McFadden reported that Plaintiff called her and harassed her in violation of the PFA order, a report that led to an arrest warrant. Id. at 17:2-7, 37:18-38:1.

On January 25, 2013, at about 1:30 p.m., Plaintiff was driving McFadden in his car as they ran errands when an argument erupted between them. Am. Compl. 5, ECF No. 7.[3] At an

---

[2] According to Plaintiff, in the midst of an argument, McFadden stabbed him in the face with a box cutter, an action which required him to physically restrain her. Id. at 24:17-25:11.

[3] Because the Amended Complaint is not numbered consistently, the Court refers to the page numbers imposed by ECF.

intersection, McFadden suddenly removed the keys from the car's ignition and fled, leaving Plaintiff stranded at the scene. Id. Police Officers Little and Tyrone Simmons[4] arrived shortly afterward, ran a background check and discovered that McFadden had a PFA order against Plaintiff, and demanded that Plaintiff move his vehicle. Id. Plaintiff called a friend from 1:56 p.m. to 2:13 p.m. in order to obtain a second set of keys. Id. During this time, the Officers departed to retrieve the keys from McFadden at 6137 Mascher Street. Id.; Johnson Dep. 34:12-15. Soon thereafter, Plaintiff's friend arrived with the keys and Plaintiff returned home. Am. Compl. 5.

At some point during this incident, McFadden called the police from 6137 Mascher Street. Id. Ex. C, McFadden Interview Report 20. Police Officers Allen and Michael Shear responded to this call and interviewed McFadden, who reported that, at approximately 2:00 p.m. that day, Plaintiff had kidnapped her at knife point and forced her into his vehicle. Pl.'s Resp. 1; Hr'g Tr. 33:22-34:9, Feb. 20, 2015 (reading McFadden's Domestic Violence Report, which is illegible as produced); Am. Compl. 5-6. McFadden further reported that while the vehicle was stopped at an intersection, "[s]he jumped out of

---

[4] Plaintiff supplied Officer Simmons's name in his response to the motion for summary judgment. Pl.'s Resp. Ex. E, at 15 (ECF page numbering) (computer-aided dispatch report showing Officers Simmons and Little as the responding officers).

defendant's vehicle, ran home and called police." Hr'g Tr. 34:5-7 (reading McFadden's Domestic Violence Report). As Officers Allen and Shear were interviewing McFadden, Officers Little and Simmons arrived at 6137 Mascher Street, although their actions there are unaccounted for. Pl.'s Resp. 1. Almost a month later, on February 21, Detective James Anderson interviewed McFadden concerning the events of January 25, during which she indicated that she wanted to press charges against Plaintiff. Am. Compl. Ex. C, McFadden Interview Report 21.

On February 24, 2013, a police officer pulled Plaintiff over for running a red light and, noticing that Plaintiff's PFA violation arrest warrant was outstanding, arrested him. Johnson Dep. 13:21-17:7. Plaintiff spent approximately thirty hours in custody and the charges were subsequently withdrawn "after phone records were presented to the District Attorney's office confirming that I did not call Ms. McFadden[;] [s]he actually called me." Id. at 17:24-18:3, 40:8-13.

On March 15, 2013, the day after the PFA violation charges were allegedly dismissed, Hr'g Tr. 25:12-15, Detective Andersen filed the Affidavit of Probable Cause in connection with the January 25 kidnapping incident, thus generating a warrant for Plaintiff's arrest. Am. Compl. Ex. C, Aff. Probable Cause 19.

4

On March 21, 2013, Plaintiff went to the police station in order "to interview with a detective about a police report [he] had filed about [McFadden] committing identi[t]y theft and using [his] utilities unauthorized." Johnson Dep. 28:17-20. Upon arriving at the station, the police ran a background check, discovered that Plaintiff's kidnapping arrest warrant was outstanding, and arrested him. Id. at 28:20-29:1. Plaintiff spent approximately one day in custody and the charges were subsequently withdrawn "after evidence was--well, after deposition hearings of the DA with the complaining witness and several conversations between my defense attorney and the DA concerning issues with the discovery." Id. at 40:13-19, 44:17-22.

Plaintiff alleges numerous discrepancies and timing issues in the events recounted above, as well as in the official reports referring to these events. He claims that these inconsistencies demonstrate that he could not have committed the kidnapping crime on January 25, 2013, for which he was arrested and therefore no probable cause supported this arrest. Am. Compl. 6.

In addition, Plaintiff subpoenaed the police department for the mobile data terminal information in order to show the time, whereabouts, and dispatch data of Officers Little

and Simmons on January 25, 2013. Id. However, Plaintiff asserts that this information was not provided to him. Id.

In sum, Plaintiff claims the following: (1) he was arrested without probable cause, in violation of the Fourth Amendment; (2) the denial of his information request constitutes a Brady[5] violation; (3) Defendants violated his Fifth and Thirteenth Amendment rights;[6] and (4) the City failed to properly train and supervise its employees, which contributed to these rights violations.

## II. PROCEDURAL HISTORY

On January 21, 2014, Plaintiff filed his Amended Complaint pro se, in which he made the claims listed above. ECF No. 7. Defendants filed their Answer on June 16, 2014. ECF No. 11. After a status and scheduling conference held on October 21, 2014, the Court dismissed then-Defendant Philadelphia Police Department from the case, directed Defendants to take Plaintiff's deposition, and imposed a deadline for Defendant's motion for summary judgment. ECF No. 15. On January 20, 2015, Defendants timely filed their motion for summary judgment, which

---

[5] Brady v. Maryland, 373 U.S. 83 (1963).

[6] In the Amended Complaint, under the "Basis for Jurisdiction" section, Plaintiff listed "5th & 13th amendment (due process)." Am. Compl. 2.

included as an appendix the full transcript of Plaintiff's deposition. ECF No. 16. At a status conference and hearing held on February 20, 2015, the Court asked Plaintiff what additional discovery, if any, he would need in order to effectively respond to Defendants' motion. Hr'g Tr. 39:5-12. The Court ordered Defendants to provide the discovery that Plaintiff requested[7] and directed Plaintiff to file his response. ECF No. 18. On March 12, 2015, Plaintiff timely did so. ECF No. 19.[8] The motion for summary judgment is now ripe for disposition.

**III. STANDARD OF REVIEW**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is

---

[7] Plaintiff requested one police report and two computer-aided dispatch reports. Hr'g Tr. 39:10-41:10.

[8] Plaintiff styled his response "Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment."

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

**IV. DISCUSSION**

    A. <u>Fourth Amendment Violation</u>

Plaintiff believes several inconsistencies prove that his March 21, 2013, arrest for kidnapping was not supported by probable cause, as required by the Fourth Amendment. As a basis for this claim, he identifies the following inconsistencies:

- Plaintiff was stranded with his car at 2 p.m. on January 25, 2013, and therefore could not have kidnapped McFadden at that time, as she indicated. Am. Compl. 5-6; Hr'g Tr. 30:16-31:1.
- Officers Little and Allen must have collaborated against Plaintiff, since Officer Allen's Domestic Violence Report included Plaintiff's vehicle

8

- information, to which only Officers Little and Simmons had access. Am. Compl. 5.

- The Affidavit of Probable Cause listed the date of Detective Anderson's interview with McFadden as January 25, 2013, but the date per the Interview Report was February 21, 2013. Hr'g Tr. 18:2-16.

- Detective Anderson interviewed McFadden on February 21, 2013, but did not issue the Affidavit of Probable Cause until March 15, 2013, the day after Plaintiff's PFA violation charges were withdrawn. Id. at 21:11-24.

- Officer Little's Declaration states that he has had "no other interactions with Corey Johnson in [his] life and was not involved in his arrest or his prosecution." Defs.' Br. Ex. A, James Little Decl. 2. However, Plaintiff asserts that he and Officer Little were "members of the 2004 graduating class of Germantown High School," "had several verbal disputes throughout their high school tenure," and "matriculated a Civil Rights course together in 2004." Pl.'s Resp. 2.

- Officer Allen's Declaration states that after interviewing McFadden at her home on January 25, 2013, he "transported her to the Southwest Detective Division for further investigation." Defs.' Br. Ex. B, Efun Allen Decl. 2. However, Plaintiff notes that Detective Anderson's Interview Report is actually dated February 21, 2013. Pl.'s Resp. 2.

- Plaintiff notes numerous time-stamp discrepancies on the computer-aided dispatch report produced in connection with the January 25, 2013, traffic stop and kidnapping call. Id. at 2.

As the Third Circuit has held, "the Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause." Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995) (citing Papachristou v. City of Jacksonville, 405 U.S. 156, 169 (1972)). "Probable cause to arrest requires more than mere suspicion; however, it does not require that the

9

officer have evidence sufficient to prove guilt beyond a reasonable doubt." Id. at 482-83. Rather, an arresting officer has probable cause "when the facts and circumstances within [his] knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Id. at 483; see also Beck v. Ohio, 379 U.S. 89, 91 (1964) (requiring the officer at the moment of arrest to have "had reasonably trustworthy information" "sufficient to warrant a prudent man in believing that [the imminent arrestee] had committed or was committing an offense").

      Here, Detective Anderson's Affidavit of Probable Cause was based exclusively on the Detective's interview of McFadden and the Domestic Violence Report completed by Officer Allen at the scene. Am. Compl. Ex. C, Aff. Probable Cause 19. Aside from Detective Anderson's apparent misstatement of the date of McFadden's interview on the Affidavit, Plaintiff offers no evidence that the Detective was aware of any of the inconsistencies listed above. For example, there is no indication that the Detective knew about Plaintiff's vehicle incident on January 25, 2013, his consequent alibi, his high school interactions with Officer Little, or the minor timing discrepancies on the computer-aided dispatch report. At the hearing, Plaintiff asserted that the Detective "should have

10

investigated it further but he did not." Hr'g Tr. 39:3-4. However, it is "well-established" that "probable cause may be based on a single and reasonably reliable eyewitness identification." Greene v. City of Phila., No. 97-4264, 1998 WL 254062, at *7 (E.D. Pa. May 8, 1998); see also Wilson v. Russo, 212 F.3d 781, 790 (3d Cir. 2000) (holding that "a positive identification by a victim witness, without more, would usually be sufficient to establish probable cause," absent "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers"). Again, Plaintiff has not shown that Detective Anderson knew of any reason to discount McFadden's testimony.

Plaintiff also believes that Detective Anderson's delayed filing of the Affidavit of Probable Cause--delayed to the day after Plaintiff's PFA violation charges were dropped--permits an inference that the Detective either knew McFadden's allegations were false or vengefully submitted the Affidavit upon learning that Plaintiff had evaded the earlier charges. Hr'g Tr. 25:14-28:1. However, Plaintiff's only support for this theory is that both Detective Anderson and the police officer involved in the PFA violation investigation were assigned to the same division. Id. at 23:15-25. This evidence is clearly insufficient to support Plaintiff's claim. Plaintiff has shown

11

nothing that impugns Detective Anderson's determination of probable cause.

This analysis leads the Court to two conclusions. First, Detective Anderson had probable cause to make the arrest. Second, Officers Allen and Little--the only individual defendants in this case--did not make the probable cause determination and cannot be held responsible for any lack of probable cause. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . ." (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986))). Although Plaintiff notes that the police reports related to these incidents contained some inconsistencies, these are ultimately irrelevant. No reasonable jury could find for Plaintiff on the evidence he presents. Pignataro, 593 F.3d at 268. For these reasons, Plaintiff's Fourth Amendment claim fails.

B.  Brady Violation

Plaintiff claims that the police department failed to provide him with the discovery he requested in his criminal prosecution, and that he thereby suffered a Brady violation. Under Brady v. Maryland, the prosecution must produce to the defendant evidence that is material to either guilt or

punishment, irrespective of good or bad faith. 373 U.S. 83, 87 (1963). As Defendants point out, it is axiomatic that Brady violations involve suppression of evidence in the context of a criminal trial. Defs.' Br. 11; Brady, 373 U.S. at 87-88. Here, the District Attorney decided to drop the charges. There was no trial, nor was there any indication that the prosecutor would have suppressed this evidence if the decision was made to pursue the charges. Plaintiff's Brady claim fails.

    C.    Fifth Amendment Violation

Plaintiff does not explain the basis for his Fifth Amendment claim.[9] In any event, it is clear that none of the Defendants in this case--as individual police officers and a municipality, respectively--may be held liable for Fifth Amendment violations. See Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983) ("The limitations of the fifth amendment restrict only federal governmental action . . . ."). Therefore, Plaintiff's Fifth Amendment claim must fail.

    D.    Thirteenth Amendment Violation

Plaintiff does not explain the basis of his Thirteenth Amendment claim. In the Amended Complaint, under the "Basis for Jurisdiction" section, he listed "5th & 13th amendment (due

---

[9] He may have intended it as part of his Brady claim. To the extent that he did, the Court treated this claim in subsection IV.B above.

process)." Am. Compl. 2. Therefore, it appears that Plaintiff intended to bring a due process claim under the Fourteenth Amendment, not the Thirteenth, and the Court will construe the claim as such. Although Plaintiff could theoretically proceed against Defendants on this ground, he has not provided any factual basis to support this claim.[10] Therefore, the claim cannot survive the motion to dismiss.[11]

E.  Monell Claim

In the Amended Complaint, Plaintiff states: "The actions of the [Philadelphia Police Department ("the PPD")] against me are the result of its failure to properly train and discipline its members to abide by their constitutional oaths. The City of Philadelphia utilizes the PPD as its main law enforcement agency and therefore holds supervisory responsibility over the PPD." Am. Compl. 6. It appears from this statement that Plaintiff alleges a Monell claim under 42 U.S.C. § 1983.

---

[10]     Again, he may have intended it as part of his Brady claim. To the extent that he did, the Court treated this claim in subsection IV.B above.

[11]     Alternatively, if Plaintiff did intend to bring a Thirteenth Amendment claim, it would still fail. As Defendants note, Plaintiff "has adduced no evidence of any conduct that could arguably be interpreted as involuntary servitude in violation of the Thirteenth Amendment." Defs.' Br. 12. The Court agrees.

Under Monell v. Department of Social Services of City of New York, the Supreme Court held that municipalities may be sued for monetary damages under § 1983 where the constitutional violation alleged results from an official policy or custom. 436 U.S. 658, 690-91 (1978). Notably, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691. In order to establish a Monell claim, a plaintiff must plead the following:

> (1) the municipality had a policy or custom that deprived [the plaintiff] of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) that [the plaintiff's] injury was caused by the identified policy or custom.

Grant v. Winik, 948 F. Supp. 2d 480, 512-13 (E.D. Pa. 2013) (Robreno, J.) (citing Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403-04 (1997)).

In addition, even "in the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). "However, this failure to train can serve as the basis for § 1983 liability only 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the

[municipal employees] come into contact.'" Id. (alteration in original) (quoting City of Canton, 489 U.S. at 388). Accordingly, a plaintiff "must identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Id.

Here, Plaintiff's Monell claim encounters two fatal difficulties. First, as the Court found above, Plaintiff did not suffer any constitutional violations. Second, Plaintiff has not offered any evidence that the City (1) had in place a policy or custom directing its employees to perform any of the alleged unconstitutional actions, or (2) failed to train its police officers in a particular way, such that this failure led to Plaintiff's injuries. Instead, the allegations amount to bare assertions, upon which no reasonable jury could find for Plaintiff. Pignataro, 593 F.3d at 268.

. . . .

In light of the above, the Court finds that Plaintiff has not provided evidence sufficient to sustain his claims under the Fourth Amendment, the Thirteenth Amendment, the Fourteenth Amendment, or Monell. In addition, Plaintiff's claims under Brady and the Fifth Amendment fail as a matter of law.

**V.    CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment. An appropriate order follows.